NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-764

COMMONWEALTH

vs.

JEVAUGHN K. MCMILLAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Commonwealth charged the defendant, Jevaughn K. McMillan, with operating a motor vehicle while under the influence of liquor (OUI), second offense.  G. L. c. 90, § 24 (1) (a) (1).  The defendant moved to dismiss the charge, citing a violation of his right to an independent medical examination under G. L. c. 263, § 5A.[1]  After an evidentiary

---

[1] General Laws c. 263, § 5A, provides:

"A person held in custody at a police station or other place of detention, charged with operating a motor vehicle while under the influence of intoxicating liquor, shall have the right, at his request and at his expense, to be examined immediately by a physician selected by him.  The police official in charge of such station or place of detention, or his designee, shall inform him of such right immediately upon being booked, and shall afford him a reasonable opportunity to exercise it.  Such person shall,

hearing, a judge of the Chicopee District Court allowed the motion.  The Commonwealth appeals, maintaining that dismissal was improper.  We affirm.

Background.  We draw the undisputed facts from the ruling on the defendant's motion to dismiss, supplemented by testimony consistent with those findings.  "[W]e defer to the motion judge's finding[s] of fact in the absence of clear error." Commonwealth v. King, 429 Mass. 169, 172 (1999).  An officer of the Chicopee police department responded to a report that a man was slumped over the steering wheel of a car with an open door. The officer smelled an odor of alcohol coming from the vehicle and saw the defendant hanging outside the driver's side door, nonresponsive.  The officer called the fire department to evaluate the defendant.  When the defendant awakened, he appeared confused, spoke with slurred speech, and had red, glassy, bloodshot eyes.  The officer, based on his training and experience, believed the defendant was severely intoxicated and arrested him for OUI after the fire department released him.

During the defendant's booking process, a State trooper read him a statutory rights and consent form that, among other

_____

immediately upon being booked, be given a copy of this section unless such a copy is posted in the police station or other place of detention in a conspicuous place to which such person has access."

2

things, outlined his right to an independent medical examination.  G. L. c. 263, § 5A.  The defendant signed the form.  Neither the arresting officer nor the trooper provided the defendant with a copy of the statutory rights form during the booking process.[2]  The § 5A rights were not conspicuously posted in the station.

Discussion.  1.  Violation of statutory notice requirement. General Laws c. 263, § 5A, requires that a person in custody and charged with OUI "be informed of his right to obtain an independent physical examination immediately after he is booked and that he also be given a copy of the statute, unless a copy is conspicuously posted in the place of detention." Commonwealth v. Gruska, 30 Mass. App. Ct. 940, 940 (1991).  The additional "statutory right" to receive a copy of the statute unless one is conspicuously posted "evinces the Legislature's concern that defendants be adequately informed of their right to an independent examination."  Commonwealth v. Andrade, 389 Mass.

_____

[2] The arresting officer testified that his "normal practice" is to put a copy of the rights form with the property of the arrested person, all of which is returned to the person eventually -- sometimes up to thirty days later.  The officer did not remember what he did on the day of the defendant's arrest.  Although we are skeptical that statutory compliance could be achieved by providing a copy of the rights form that might not be available to the defendant for up to thirty days, we need not consider this question in the circumstances of this case.

3

874, 878 (1983). Prompt notice is critical to the defendant's ability to obtain potentially exculpatory evidence, see id. at 881, so "strict compliance with the requirements of G. L. c. 263, § 5A, should be the unaltered practice." King, 429 Mass. at 180, quoting Commonwealth v. McIntyre, 36 Mass. App. Ct. 193, 202 (1994). Because the defendant was not provided with a written notice and none was posted, his rights were violated.

2. Remedy. "Section 5A does not state the consequences that should flow from a violation of its terms." King, 429 Mass. at 177, quoting Ames, 410 Mass. at 607. "Therefore, the task of fashioning remedies is left to the courts, which must provide a remedy appropriate to the circumstances of each case." King, supra. "[E]ach case must be considered on its own set of facts and a remedy adequate to cure potential or actual prejudice resulting from a violation of G. L. c. 263, § 5A, should be allowed." Andrade, 389 Mass. at 878.

"Where a defendant's right under § 5A has been violated, the violation itself is prima facie evidence that the defendant has been prejudiced in that his opportunity to obtain and present potentially exculpatory evidence has been restricted or destroyed." King, 429 Mass. at 180-181. The case law articulates three situations in which this "presumption of

4

prejudice . . . may be overcome," two of which are potentially germane here -- "by overwhelming evidence of intoxication . . . or by other evidence indicating that the omission was not prejudicial in the circumstances."  Id. at 181.[3]

We are not persuaded that the first situation was present, as the only evidence of the defendant's intoxication was the arresting officer's testimony.  This is inadequate to overcome the presumption of prejudice.  See Andrade, 389 Mass. at 882 (if persuasive evidence exists "apart from the officers' testimony . . . it could fairly be said that the defendant was not prejudiced by the police officers' violation of G. L. c. 263, § 5A" [emphasis added]).  See also Commonwealth v. Priestley, 419 Mass. 678, 682 (1995) (overwhelming evidence of intoxication when defendant's inculpatory admissions "independently corroborated the police testimony"); Commonwealth v. Hampe, 419 Mass. 514, 523 (1995) ("dismissal may be inappropriate" in case of "overwhelming evidence of guilt apart from the breathalyzer test and police testimony").

This brings us to the second situation, where there is "evidence indicating that the omission was not prejudicial in

_____

[3] A third situation -- not arising here -- is when there are "exigent circumstances . . . which might have justified the police officers' failure to communicate the defendant's right to him."  Andrade, 389 Mass. at 879.  See Commonwealth v. Atencio, 12 Mass. App. Ct. 747, 750 (1981).

5

the circumstances." King, 429 Mass. at 181. The Commonwealth seems to assert that, if the defendant got actual notice -- that is, if the rights were read to him -- he was not prejudiced. We disagree. In our view, the cited cases require that, to demonstrate a lack of prejudice, the Commonwealth must show that "the failure of the police to notify the defendant that he was entitled to an examination by a physician of his own choice was inconsequential" (quotation omitted). McIntyre, 36 Mass. App. Ct. at 203, quoting Ames, 410 Mass. at 608. Because "inconsequential" means "had no consequences," these cases require the Commonwealth to demonstrate that the absence of the required notification made no difference.

None of the cases relied on by the Commonwealth rest on the adequacy of notice, alone, to show lack of prejudice. In Ames, the defendant was offered a blood alcohol content test at the hospital but refused it, permitting the judge (who was ruling after trial) to infer that the defendant "declined the blood test at the hospital and asked for a breathalyzer test because he believed that the passage of time would reduce the possibility of an inculpatory test result." Ames, 410 Mass. at 607. This assessment underlay the judge's conclusion that the defendant was not prejudiced by the absence of notification

because "if he had been so advised, he would not have changed his mind and had a blood test."  Id.

In McIntyre, the defendant and his father (both lawyers) showed actual knowledge of the § 5A right, first by educating the arresting officer about the right and then by requesting an independent examination.  McIntyre, 36 Mass. App. Ct. at 200, 203.  In those circumstances, statutorily mandated notice would simply have affirmed what they already knew and acted on, and thus could have made no difference.  Finally, in Gruska, the defendant was "shown a copy of G. L. c. 263, § 5A, in a looseleaf binder and was given an opportunity to read the statute."  Gruska, 30 Mass. App. Ct. at 941.  He "was given three to four minutes to read the statute," "was told that the statute was very important and that he should read it," and "it was then read aloud to him 'word for word.'"  Id.  "He showed no interest in it."  Id.  There, too, the evidence supported a conclusion that additional notice would have been "inconsequential" because the defendant showed no interest in the rights even when directed to review them, supporting a conclusion that neither handing him the rights or having them posted conspicuously on the wall would have aroused his interest.  Id.

Here, by comparison, after the trooper read the defendant the statutory rights form, which discussed multiple different rights, he asked questions about the defendant's understanding of his rights related to the chemical breath test and then directed the defendant to sign a form indicating that he refused the breath test. No one directed the defendant's attention to the portion of the form that set out his right to an independent medical evaluation, emphasized the importance of that right, or afforded the defendant an opportunity to read the description of that right to himself. Instead, the booking video reveals that the defendant had the form in his possession for less than ten seconds. There is simply no evidence on this record from which we can conclude that the statutory failure was "inconsequential" -- that is, that the defendant would not have elected the independent medical examination had he received the statutory notice he was due.

"A violation of § 5A interferes with an accused person's ability to rebut the charges against him." King, 429 Mass. at 179. Therefore, "suppression of evidence will not always be an effective remedy for a violation of a defendant's rights under G. L. c. 263, § 5A, since a violation of § 5A may actually prevent exculpatory evidence from being revealed" (emphasis omitted). Andrade, 389 Mass. at 881. "[D]ismissal in such a

8

case is not solely a prophylactic measure intended to deter future misconduct" by police, "it is primarily meant to prevent prosecution and conviction of an individual who, had he been able to obtain an independent medical examination, might have been able to disprove or deflect the charges against him." King, supra.  In these circumstances, dismissal was "an appropriate remedy."  Andrade, supra at 875.[4]

Order allowing motion to
   dismiss affirmed.

By the Court (Massing, Hand &
   Hershfang, JJ.[5]),

*Paul Little*

Clerk

Entered:  October 24, 2025.

---

[4] The defendant's request for attorney's fees and costs pursuant to Mass. R. Crim. P. 15 (d), as amended, 476 Mass. 1501 (2017), is allowed.  The application setting forth the specific amount of fees and costs and supporting documentation shall be filed with this court within thirty days of the date of this decision.  See Commonwealth v. Santos, 99 Mass. App. Ct. 360, 365 (2021).  The Commonwealth shall have thirty days thereafter to respond.  See Commonwealth v. Ennis, 441 Mass. 718, 721 n.3 (2004).

[5] The panelists are listed in order of seniority.